# Staunton.

## Ex parte LESTER.

## Ex parte STONE.

## Ex parte WILSON.

### September 20th, 1883.

1. CONSTRUCTION OF STATUTES—*Liquor licenses—County courts.*—Act of March 6, 1882, amending act of March 3, 1880, and substituting "*may*" for "*shall*," was not designed to remit applications to sell liquor to the courts' arbitrary discretion. The words "*may grant the license*" mean, the court must grant it in a proper case.

2. IDEM—"*May*"—*Mandatory.*—Where statute declares a court may do a judicial act, the word "*may*" must be construed as mandatory when a proper occasion for doing the act arises.

3. IDEM—*Appeal of right—Writ of error.*—To applicant denied liquor license, by the act of March 6, 1882, there is given an appeal of right to the circuit court. Under Code 1873, ch. 178, § 2, he may upon bill of exceptions taken at the trial, apply to the circuit court for a writ of error and *supersedeas.* Of his two remedies he may resort to either. And if the circuit court also erroneously refuse the license, its decision is reviewable by this court upon appeal, or writ of error and *supersedeas*, as in other cases.

4. IDEM.—*Applicant—Contestant.*—The applicant is a party directly in interest in the decision refusing the license, and comes within the letter of Code 1873, ch. 178, § 2. Not so with contestant.

5. REVIEW OF CASES—*in pari materie—Ex parte Yeager*, 11 Gratt. 655, was founded on the law of 1849, which gave county courts arbitrary discretion as to liquor licenses; *French* v. *Noel*, 22 Gratt. 454, on law of 1870, was based on the same ground; *Leighton* v *Maury*, 76 Va. 865, on the law of 1880, construing that law as giving those courts a legal discretion reviewable upon appeal or error upon petition of either applicant or *contestant; Ailstock* v. *Page*, *ante* page 386, on law of 1880, amended by act of March 6, 1882, overrules *Leighton* v. *Maury*, so far as latter

allows right of appeal or error to the *contestant*, but decides nothing concerning the applicant. *Ailstock* v. *Page and als.*, explained and approved.

6. CASES AT BAR.—L. applied to county court of M. for license to sell liquor. It was refused, and applicant excepted. The court .certified that the applicant *proved* that he was a fit person, and that his place of business was suitable. L. applied to the circuit judge for a writ of error. He denied the writ, and endorsed the petition as follows: "The words of .the statute (1882) only allow appeal to applicant, and only allow him right of appeal during the term at which the refusal to allow his application is entered. I therefore decline to grant writ of error as asked for in the within petition."

HELD—(by a majority of the court).

  1. The applicant brought himself within the requirements of the law, and was entitled to the license applied for.

  2. The right of appeal upon errors to the circuit court was not taken away by the statute, and the applicant was entitled, on the facts manifested by the record, to have the judgment refusing him the license, reviewed and reversed by the circuit court.

. HELD—(by Lewis P., and Hinton J.).

  From the judgment of the county court refusing license under the act of March 3d, 1880, amended by the act of March 6th, 1882, (Sessions Acts 1879–80, ch. 155, p. 147, and Sessions Acts 1881–82, ch. 229, p. 238,) the applicant is entitled, during the term at which the refusal is entered, to take an appeal of right to the circuit court, and no further; and such appeal is his only remedy.

Three cases heard together, first at Wytheville, afterwards at Staunton.

Error to the decisions of the judge of the circuit court of Montgomery county, denying writs of error to the judgments of the county court of said county, rendered April 26th, 1883, refusing to grant to the applicants, James L. Lester, William E. Stone and Thomas Wilson, respectively, licenses to sell by retail ardent spirits and to keep bar-rooms in said county. The facts in each case were the same. The county court certified that the applicants proved by four witness that they were fit persons of good character and sober habits, and the places suitable and convenient, and that no evidence was offered in opposition, but concluded its judgment in each case as follows:

"And the court having heard the evidence of witnesses, is of opinion that the place is not suitable for said business, and doth refuse to grant said license."

The circuit judge, in vacation, denied the writs of error on the ground that the statute (1882) allowed the applicants appeals which must be taken during the term at which the judgments of refusal are entered, and took away any rights of appeal and of writ of error under Code 1873, chapter 178, section 2.

These cases were argued at Wytheville before a court composed of only four of the judges (one being absent), and the four judges were equally divided in opinion, but granted a rehearing of the cases at Staunton, where they were reargued before a full court.

*G. W. Hansbrough,* for James L. Lester.

*James C. Taylor,* for William E. Stone.

*A. A. Phlegar,* for Thomas Wilson.

1. The county court erred in refusing the license.—The statute, (Acts 1881–'2, chapter two hundred and twenty-nine, section two, pages 238–9,) confers on this court a sound judicial discretion, not an arbitrary power to grant or to refuse license. It is to hear testimony, both *pro* and *con.*, and on being satisfied that the person is fit, and the place is suitable for the business, power is conferred on this court, and it becomes its duty to grant the license. If its power was arbitrary, why require it to hear testimony? The autocrat, *cujus voluntas stet pro ratione,* needs no testimony. The words "may grant," indicate the jurisdiction conferred, and to be exercised in a proper case, not absolute discretion. Courts will not, in this republic, lean to a construction that would confer arbitrary power. But the provision made in the same section for appeal demonstrates that the decision of

the county court was not intended to be conclusive, and if not conclusive, then, of course, not arbitrary.

When fully satisfied that the person is fit, and the place suitable, the county court is judicially obliged to grant the license. If it refuses, then it is the duty of the higher tribunals to compel it. *Leighton* v. *Maury*, 76 Va. 865. How can the county court become satisfied? Why by proof—proof of the applicant's fitness and of the place's suitableness. Here there was such proof. The transcript does not give the evidence, but *the facts*. The county court certifies that it is a *fact* that the applicant is fit, and that the place is suitable.

2. The circuit judge erred in denying the writ of error. In his endorsement of denial, he says that the act allows appeal to applicant only during the term at which refusal is entered. Surely the judge does not mean that the appeal to the circuit court should be actually consummated during the term of the county court which refused the application. He probably means that, as usual in appeals of right, the intention to appeal should be entered of record during the said term. In this case the equivalent was done. The applicant excepted to the county court's decision, and the court certified that fact and the other facts established by the testimony.

The privilege is certainly given the applicant to appeal. No direction is given as to whether the evidence shall be certified, or whether the evidence shall be taken *de novo*. A discretion is allowed. If the county court chooses to certify the evidence adduced, or the facts established before it, there is no reason why the circuit court should not consider the certificate.

This court decided this question at its July term, 1882, in cases *ex parte* Bibb and *ex parte* Porterfield, not reported, in which it held that the applicant might elect which mode of appeal he would adopt by bill of exceptions and writ of error, or by appeal of right and evidence *de novo* before the circuit court.

But whilst the statute of 1882, in order, doubtless, the plainer to show that the discretion of the county court to grant or to deny the license is not arbitrary, does provide an appeal, it does not tie the applicant down to that provision *as his only remedy.* Admit once that the decision of the county court is not conclusive, and hence its discretion not arbitrary, and a right of appeal for errors on the face of the record follows inevitably. Code, page eleven hundred and thirty-six, sections two and three, gives any party aggrieved the right to petition for a writ of error or *supersedeas* in any civil case wherein there is a final judgment or order when there is drawn in question some matter not merely pecuniary, such as the privilege in this case denied.

And these sections, being general in terms, apply equally as well to this, the supreme court of appeals, as to the circuit court, in all appropriate cases. *Ailstock* v. *Page and als.,* decided by this court during this year at Richmond, *ante* page 386, *decides* that the contestant is not entitled to any appeal whatever to a judgment granting liquor license. It *decides* nothing *quoad* the applicants right to appeal. Its *dictum,* parenthetically interjected, as to the applicants right of appeal, was a mere *obiter dictum,* and counts as *nil.*

*W. R. Staples,* and *James A. Walker,* for contestant.

1. Under the act of March 3d, 1880, and the amended act of March, 1882, the remedy of the applicant, when license is refused him, is by appeal to the circuit court, and not by writ of error or "writ of error and *supersedeas.*" A careful examination of these statutes will show that an appeal is the only remedy contemplated by the legislature. It is true that the court of appeals in *ex parte* Porterfield and Bibb held that these remedies were concurrent, and that the applicant was entitled to his election of either; but the decision was a mere *obiter dictum,* not necessary to the due and proper disposition of the real point of controversy, and has been overruled by the present

court in *Ailstock* v. *Page et als.* In further support of this view, *Ex parte Yeager*, 11 Gratt. 655; *Leighton's Case*, 76 Va. Rep. 865, and *Rex* v. *Young and Petts*, 1 Burross Rep. 556, are relied on. See Acts of 1879–80, page 147, and the amended act of March, 1882, Acts of 1881–82, page 238.

2. In these cases the court of appeals has no jurisdiction whatever by appeal or writ of error from or to the decision of the circuit court; that the decision of the latter court is final and conclusive, and not the subject of review by any other tribunal. To sustain this proposition, the case of *Ailstock* v. *Page*, already cited, is relied on.

3. The judge of the county court having certified that, in his opinion, the place is not suitable and convenient for the sale of ardent spirits, that certificate is conclusive, and cannot be reviewed or controverted upon a writ of error.

LACY, J., delivered the opinion of the court.

The question for this court to decide in these cases is, Did the petitioners, when their application for license was refused by the county court, have a right to the remedy sought by them by writ of error to the circuit court?

The act of the legislature under which they sought their licenses is as follows: "Any person who desires a license to sell by retail, or to keep a bar-room, shall first apply therefor to the commissioner of the revenue for the city or county, who shall assess them with the proper license-tax to be paid, and they shall then pay the amount of the said tax to the treasurer or other collecting officer, and take his receipt for the same, on the certificate furnished by the assessor, and shall present the said certificate so receipted to the court of the county or corporation in which it is proposed to conduct the business; and if the court be fully satisfied, upon hearing the testimony for and against the application, should any be offered, that the applicant is a fit person, and that the place of business is suitable and convenient, it

may, upon the execution by the applicant of a bond, with good security, payable to the commonwealth of Virginia, in a penalty not less than one hundred nor more than five hundred dollars, conditioned for the faithful performance of all the requirements of this act, grant such license ; and thereupon the commissioner of the revenue shall issue the same in such form as may be prescribed by the auditor of public accounts.  If the county or corporation court shall refuse to grant the application, the tax shall be refunded, and the party aggrieved may, during the term at which such refusal is entered, appeal to the circuit court of said county or corporation, in term time or vacation.  And the judge thereof shall take cognizance of said appeal, and may grant the license upon the terms required by this act."  Acts of Assembly 1881–'82, page 238.

The only difference between this act and the act of assembly of 1879–'80 is the substitution of the word "may " for the word "shall," when prescribing the duty of the county court in the premises.  Acts of Assembly 1879–'80, page 148, section 2.

It is contended in the argument here in these cases that the terms of the above act, providing for an appeal during the term of the county court, grants to the applicant an appeal of right to the circuit court, to be heard *de novo ;* and that a writ of error will not lie to the circuit court.  *Yeager's Case,* 11 Gratt. 655, is cited to sustain the proposition that before the act of assembly granting an appeal of right, as seen above, to the judgments of the county court in such cases, the judgment of the county court was final, and not subject to review in any appellate tribunal.  The act of 1849, construed by the opinion of this court in that case, contained provisions which are not found in the present law, to-wit: "If the court be of opinion that the applicant is sober and of good character, and will probably keep a house orderly, useful, and such as the law requires, it may grant such license.  If such application be refused, the refusal shall be entered of record, and a license shall not be granted to the applicant before the next May term, unless by a

court composed of the justices to whom the first application was made, or a majority of the acting justices of the county or corporation." And an examination of the laws before that time bearing on the subject will show that the policy of the legislature had always been to impose upon all such traffic great restriction, and that the traffic was allowed only so far as the necessity of the times demanded, and to prevent the retailing of liquor in the houses of the people without license. The act of 1705, 3 Hen. St. 396, provided that the justices by their discretion should judge whether it is convenient to suffer such a house to be set up. The act of 1748, 6 Hen. St. 71–72, provided: "And if such petition shall appear reasonable, such court is hereby authorized, and may, if they think fit, grant the petitioner a license for one year and no longer, and may upon petition be renewed from year to year, if the court shall think fit." The language used in the act of 1792 was the same as this, and the act of 1819 provides that the justices shall consider the convenience of keeping the said house, the character of the petitioner, and if such petition shall appear reasonable and the court shall be satisfied, &c., and shall be of opinion that he will keep an orderly house, &c. 2 Rev. Code, chapter 240, section 1.

The same language is employed in the act of 1840. And the provisions of the act of 1849 indicated, as we have seen, no change of the policy, but contains similar provisions, and in construing the laws, this court said: "With this view of the nature of the authority given to the county court, we cannot see how, when they have heard the application, and in the exercise of their discretion have pronounced a judgment of refusal against it, the superior court can undertake to revise the judgment by means of a *mandamus*, without running counter to the law on the subject, as settled by numerous decisions of the courts, as well in England as in this country." And this court, in that case, declared that by the act of 1849 the legislature intended to clothe the county courts with a discretion in the matter of granting licenses for houses of entertainment, in the

exercise of which the justices are not liable to be overlooked and controlled by *mandamus*. And as the petitioner presented also a petition for a writ of error, the court held that there was, under the law then existing, and for reasons already given, no mode by which the action of the justices could be appealed from.

This decision was rendered in the year 1854, and the legislative intent remaining the same, the law remained unchanged down to the act of 1869–70, under which the case of *French* v. *Noel* was decided by this court. 22 Gratt., 454. And in that case the action of the county court was held to be final and conclusive. That the said county court had a discretion which could not be reviewed. That case, however, was a case of prohibition to prohibit the circuit court from reviewing and reversing the order of the county court granting a license to the applicant, upon the motion of a stranger. Still, while the opinion is very meager, we are left to conclude that the ground of the decision was the same as that upon which the decision in the Yeager case rested—that the discretion of the county court once exercised could not be reviewed at the instance of *any person*, but was final and conclusive, whether granting or refusing the license.

Before the act of 1869–70, under which the case of *French* v. *Noel* was decided, the county court was constituted of justices of the peace since 1850, elected by the qualified voters from each magisterial district in the county. But since that time, under the constitution now in force in this state, and which was ratified in the said year 1869, the county court has been held by a single judge, not elected by the people, but by the legislature; and in the acts of the legislature subsequently passed, we find the law changed from its ancient form in this respect, and the language with which we have now grown familiar in this opinion—which vested an unlimited discretion in the county court, which left that court to do what *it might think fit*, or be of opinion to do— has disappeared. We find the law amended so as to provide that, "upon said court being satisfied, *after hearing testimony*

*for*, and *if any should be offered, against* the application, the said license *shall* be granted." See Acts 1871–72, Code 1873, chapter 34, section 24. No longer leaving an unlimited discretion in the county court upon the subject, but making it mandatory, providing that the court shall hear and decide upon testimony adduced before it, and if, upon this testimony, the court is satisfied—that is, if it is *proved*—that the applicant is a person of good character, and the place suitable, then the county court shall grant the license. Suppose under this law the county court had refused the license when the applicant brought himself within its requirements, when the legislature made it thus mandatory upon the county court to grant the license, and that court had rendered an erroneous decision, did not the party aggrieved have redress in the appellate court, as the law then stood? Why would not an appeal lie in such case, under the law last cited, to the circuit court, upon a writ of error and *supersedeas*, under the general law? The court was required to do a judicial act, to decide upon evidence, and why would not an appeal lie to the circuit court to correct an erroneous decision? Certainly, not for the reasons assigned in Yeager's case, that the county court had an unlimited discretion to do as it might deem fit; that could not be contended under this law. But the legislature has shown no disposition to retrace its steps, and by the act of 1876–77 we find that it not only so required the county court to act upon the testimony, but it provides also: "If the county court shall refuse to grant the application, the party aggrieved may, during the term at which such refusal is entered, appeal to the judge of the circuit court of said county, in term time or vacation, and the judge thereof shall take cognizance of such appeal, and may grant the license upon the terms required by this act." And by the act of April 1st, 1879, it was provided in similar terms, and the circuit court was authorized *to order the county* court to grant the license. The act of 1879–'80 was identical with this, except that the circuit court was authorized

to grant the license without any order to the county court.  The act of 1881–'2, *supra*, is the same, except that the word "shall" is stricken out and the word "may" inserted in its stead.  And it is earnestly contended here that the change of this word has remitted the whole subject to the unlimited discretion of the county court, which is to be found in the old laws of this commonwealth.  An inspection of the law quickly refutes this assumption.  The county court is not only required to hear and decide upon the evidence in the case, but if the county court should refuse to grant the license, then the party aggrieved is allowed an immediate appeal to the circuit court, in term time or vacation.  An unlimited discretion could not long survive before such a provision.  It is not known to the court what the object of the legislature was in striking out the word "shall" and inserting the word "may."  An inspection of the act shows that it was provided that the "county court shall," and the "circuit court may," grant such license.  It may have been changed for uniformity ; it may have been changed to rebut the presumption that the circuit court had any more an unlimited discretion than the county court.  That the change of this word did not change the character of the duty required of the county court is obvious, for the right of immediate review is provided for, which would have been useless if there was an ulimited discretion which could not be reviewed at all.

The word "may" is sometimes construed as permissive and sometimes as mandatory.  It is always construed as mandatory when a positive duty is imposed—when third persons have a claim that the act shall be done.  When a statute confers an authority to do a judicial act in a particular case, it is imperative on those so authorized to exercise authority when the occasion arises.  In such cases the word "may" is not used to give a discretion, but to confer a power upon the court, and the exercise of such power depends not upon the discretion of the court or judge, but upon the proof of the particular case out of which such power arises.  Sedgwick on Construction of Statutes, 375.

And so in the case in hand, what is meant by "may grant," either as applied to the county court or the circuit court, is that such court shall have the power to grant, the jurisdiction to grant, such license, and the authority thus conferred must be exercised if the case be properly made out by a party interested.

It is not an arbitrary discretion vested in the judge of the court, but a judicial discretion, subject to be reviewed in an appellate court. This question has been several times before this court since the change in the policy of the legislature which we have considered above. In the case of *Leighton* v. *Maury*, reported in 76 Virginia Reports, page 865, the act of assembly was the subject of elaborate review. In that case the court says: "When the legislature made it mandatory upon the county court to grant the license in a given case, and authorized an appeal in case of refusal, it made it equally mandatory upon the circuit court to grant the license; and if the latter court renders an erroneous decision it is difficult to understand why the party aggrieved may not have redress in this court." Such redress, it is evident, could not be had here except under the general law, for there is no other law giving this court any concern with the subject. And if by the general law this case may be appealed from the circuit court, why under the general law may this case not be appealed from the county court to the circuit court? It is the same case in each court, it concerns the same subject matter and the same party. If appeals lie from the county court to the circuit court to correct erroneous judgments, why not in this case if there is an erroneous judgment?

But it is contended in the argument that when the statute gave the right of immediate appeal to the circuit court, either in term time or vacation, it took away by implication such right of appeal under the general law upon errors assigned, and that it also abolished the jurisdiction of this court to review the circuit court in the premises, a jurisdiction which had been repeatedly taken and held by this court in similar cases; and that no express words of revocation were necessary; that the granting the

right of immediate appeal to the circuit court deprived this court of this jurisdiction.  Is this so?

This court, in passing upon this question in the cases of *ex parte* Bibb and *ex parte* Porterfield, said, speaking of this right of immediate appeal, and also of the right to the appeal upon errors assigned: "The petitioner had *two* remedies by which to correct the supposed errors of the county court.  He might, under our general law respecting appeals, writs of error and *supersedeas*, (Code 1873, chapter one hundred and seventy-eight, section two,) have, upon bill of exceptions taken at the trial in the county court, applied to the circuit court, or judge thereof in vacation, for a writ of error, or, under the act of 1879–'80, (exactly the same law as the present upon this point,) he had an appeal of right from the judgment of the county court to the circuit court.  The parties, therefore, had two remedies, writs of error and appeal of right.  Though they differ in their nature, the object in each is the same.  The party complaining had a right to resort to either for redress of alleged grievances."  This case has not been reported.  And this court held the same upon the question of jurisdiction in the case of *Chalmers and others* v. *Funk & Son*, upon appeal from the circuit court of Roanoke county, at the Wytheville term, 1882, reported in 76th Virginia Reports, page 717.

In the case of *Leighton* v. *Maury, supra,* this court maintained the same ruling.  That case was upon appeal by the applicant for license, and the court said: "Statute declares that a person who is a party to any civil case, in which there is a final judgment, decree or order, may present his petition for an appeal, writ of error, or *supersedeas*.  It will be understood, of course, that when a mere pecuniary matter is involved, the subject of controversy must be $500 or upwards.  This, however, is not a case of that sort; no mere pecuniary matter is involved. It is a final judgment or order in a civil case touching the exercise of a right or privilege conferred by an act of the legislature.  It is covered by the express terms of the statute already

cited relating to appeals, &c., and the right to appeal can only be taken away by express enactment or by implication equally plain. We are therefore of opinion that an appeal of right lies from the county court to the circuit court whenever the license is refused; and if the circuit court also erroneously refuses the license, the decision is the subject of review by this court upon appeal, or writ of error and *supersedeas*, as in other cases."

Now, we will remark here, that the same reasoning which maintained the right of appeal or writ of error from the circuit court, under the general law, applies with equal force to the right of appeal or writ of error to that court from the county court. In the same case this court said: "Whether the person who enters himself a party defendant, and resists the application, is equally entitled to an appeal, is a question we are not called upon to decide here." But, proceeding in the case, the court said: "Another question is, however, presented for our consideration. As has been already stated, William F. Maury entered himself as a defendant both in the county and circuit courts, and opposed the application for a license. * * * * It was a matter in which he was personally interested, and one in which every citizen is more or less concerned. Mr. Maury having been a party on the record in the circuit court, it was competent for him to appear and defend in this court, and he ought properly to have been served with process upon the appeal, writ of error and *supersedeas*. * * * In all these cases, a person making himself a party, however, renders himself liable for costs, and may recover costs as in other cases."

So that the court in that case does substantially declare the right of a person who contests the granting of the license to appeal, for it would seem that if a person once of right becomes a party in interest, he is included in the general terms of the statute concerning appeals. But this question coming directly before this court in the case of *Ailstock* v. *Page*, *ante* page 386, this court overruled the said Leighton case on that point. In the said case of *Ailstock* v. *Page*, the court said:

"Several interesting questions are raised, only one of which, however, in the view we take of the case, is it necessary for us to decide. That question is this: "Did the circuit court have jurisdiction to award a writ of error and *supersedeas* in this case?"

The application for a license had been granted in that case by the county court, and the contestant, upon the authority of the Leighton case, *supra,* had obtained a writ of error from the circuit court, and in this court the case was prohibition against the circuit court upon the petition of the applicant for the license; and this court held that the contestant had no right of appeal, or writ of error and *supersedeas,* and so much of the Leighton case as was in conflict with that decision was declared to be overruled. That case did not concern, nor in any way apply to, the questions in this case. That was a case where the contestant appealed to the circuit court, and the applicant was not aggrieved by the order of the court, as his license had been granted. This is a case, as we have seen, where the applicant was denied his license, and applied to the circuit court for a writ of error and *supersedeas,* which was denied. And yet it is earnestly contended in argument here against the applicant, that the case of *Ailstock* v. *Page* determined the question here. Nothing concerning the applicant was within the submission, as we have seen in that case, and this court expressly declared its purpose to decide only one question, and that the question whether the contestant could appeal. We think the court in the Ailstock case rightly decided that the contestant had no right of appeal. There is no authority in the statutes for the contestant to make himself a party; it is not a case in which he has an interest such as entitles him to be made a party to the case, and thus to come within the terms of the statute. And this view is, we think, sustained by the case of the *Supervisors of Culpeper* v. *Gorrell,* 20 Grattan. In that case, when Joseph B. Gorrell and seven others came in to object to the public con-

demnation of land, this court said: "It is not pretended that the said exceptants had any interest in the lands condemned, and from what has already been said it must be manifest that the said exceptants had no right to become parties to the said proceedings. We are of opinion that the circuit court had no jurisdiction to award a writ of error and *supersedeas* for two reasons: First. Because the said exceptants were not parties to the said judgment, nor to the proceedings in which it was rendered. * * * It is well settled that a person who is not a party to a proceeding in which the judgment of the court below complained of was rendered cannot obtain a *supersedeas* to such judgment. The word "person" in the law giving the right to obtain an appeal, writ of error, or *supersedeas* has been construed to mean "party," and the word "party" is, itself, also used in the law: 'Any person who is a party to any case' is a part of the language of the law. Acts, 1869–70, p. 221; 1 Rob. Practice, n. p. 656, 657, and the cases cited, especially *Sayre* v. *Grymes*, 1 Hen. & Mun., 404; *Wingfield* v. *Crenshaw*, 3 Hen. & Mun. 245; and *Holcomb* v. *Purcell*, 1 Rob. Pr. *supra*. * * * A person must not only be a *party* to the proceeding in the court below, but he must also be *aggrieved* by the judgment rendered therein to entitle him to obtain a *supersedeas* to such judgment."

In the Ailstock case, we might in like manner say as the court said in that case, the parties seeking to appeal were not parties; their mere offer to become so did not make them parties; they were not entitled to be made parties. Any indirect interest they may have had in the subject as citizens, tax-payers, and land-holders of the county was not sufficient to make them parties; there is no authority in the law to make them parties, and without such authority they cannot be made so. And this court correctly held in the said case of *Ailstock* v. *Page* that they had no right to ask for, and the circuit court no right or jurisdiction to award to them, a writ of error and *supersedeas*.

But that case does not apply to or affect this case. As we

have seen, this case affects the rights of the applicant, who is a party directly in interest, and comes within the letter of the statute. So we are of opinion, for the reasons herein stated, that the right of appeal during the term to the circuit court in term time or vacation, does not take away or impair the right of appeal, writ of error, and *supersedeas,* which existed before; such a right could only be taken away by express enactment or implication equally plain; and both remedies exist, and either may be used by the applicant. And the circuit court erred in deciding that the right of appeal upon errors to the circuit court had been taken away by the said statute. And the said ruling of the circuit court is reversed and annulled. And it appearing to the court from the record in these cases that the parties applying for the license brought themselves within the terms of the law, as appears by the evidence, they were entitled to have the license according to the terms of their application. The judgment of the county court refusing them license is erroneous and must be reversed and annulled, and these cases remanded to the county court of Montgomery, with directions to grant the license in each case. This court does not express any opinion upon the policy of the law under consideration. The wisdom and propriety and policy of the law is a matter which comes wholly within the legislative province, and all that has been said upon that subject in the argument in these cases would be more properly addressed to the legislature.

FAUNTLEROY and RICHARDSON, J.'s, concurred in the opinion.

LEWIS, P , and HINTON, J., dissented.

The judgment is as follows:

The court having maturely considered the transcript of the record of the judgment aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the

Judgment.

record, that the circuit court erred in refusing a writ of error and *supersedeas* to the judgment of the county court herein, and that the said county court erred in refusing to the applicant, Lester, a license to sell liquor, &c. It is, therefore, considered by the court, that the said judgment of the county court be reversed and annulled. And this court, proceeding to render such judgment as the said circuit court ought to have rendered, it is considered by the court that the plaintiff in error have a license to keep a bar-room and to sell wine, &c., at Central Hotel, in Christiansburg, Va. And this case is remanded to the said county court of Montgomery, with instructions to grant to the said plaintiff in error, James L. Lester, such license forthwith. Which is ordered to be certified to the said county court of Montgomery.

Similar judgments were rendered in *ex parte Stone* and in *ex parte Wilson.*

JUDGMENTS REVERSED.