Stannton.

LESTER v. PRICE AND ALS.

SEPTEMBER 29th, 1887.

1. LIQUOR LICENSES—*Appeal.*—Under Acts 1883-4, p. 605, application for
   license to retail liquor must be made to the county court, and either
   applicant or defendant may appeal of right from the decision to the
   circuit court, where the application is heard *de novo*, and no appeal
   lies to the decision of the latter court.
2. IDEM—*Change of bar-room.*—Application to county court under Code
   1873, ch. 34, § 7, to change bar-room to some other place in the county,
   is an application for license to sell liquor by retail for which the appli-
   cant has no license, and comes under the provisions of Acts 1883-4,
   p. 605, and is subject to its provisions as to appeal; and applicant, re-
   fused license on appeal, by circuit court, is not entitled to an appeal to
   this court as provided by Code 1873, ch. 178, § 2.

Argued at Wytheville.   Decided at Staunton.

Error to judgment of circuit court of Montgomery county,
rendered September 23d, 1885, reversing, on the appeal of
George Price and others from the decision of the county
court of said county rendered September 5th, 1885, chang-
ing, under Code 1873, ch. 34, § 7, the location of James
Lester's place of selling liquor by retail under his license
at Yellow Sulphur Springs, in said county, to Bang's, in said
county.   The circuit reversed the decision of the county
court, and to its judgment Lester obtained from one of the
judges of this court a writ of error and *supersedeas*.   Opin-
ion states the case.

*G. W. & L. C. Hansbrough,* for the plaintiff in error.

*G. G. Junkin* and *T. E. Sullivan,* for the defendants in error.

RICHARDSON, J., delivered the opinion of the court.

The circumstances of the case are these : At the June term, 1885, of the county court of Montgomery county a license was granted by said court to James Wade to keep a bar-room at the Yellow Sulphur Springs in said county. By an order of said county court, made at the July term thereof, 1885, said license was transferred from said Wade to J. L. Lester. And on the fifth of September, 1885, said Lester made application to the county court of Montgomery to have said license changed from the Yellow Sulphur Springs to the Alleghany House, at Bangs, in said county ; and thereupon George Price and others, on their motion, were entered as defendants, and they contested said application. But on consideration the said county court granted the motion of said applicant and made an order changing the license from the Yellow Sulphur Springs to Bangs ; and thereupon the said contestants, Price and others, appealed to the judge of the circuit court of said county, in vacation.

The appeal came on to be heard on the twenty-third of September, 1885, in vacation, when the appellee, the said J. L. Lester, appeared and moved the said judge to dismiss the appeal on the ground that no appeal was allowed by law from the said judgment of the county court ; but the judge overruled the said motion, and proceeded to hear the application, and, having heard the same, gave judgment refusing the license. To this judgment a writ of error was awarded by one of the judges of this court.

It is assigned for error, that the judge of the circuit court improperly overruled the motion of the appellee below, the plaintiff in error here, to dismiss the appeal.

VOL. LXXXIII—82

Whether or not the error assigned is well taken, depends upon the proper construction of the statutes in force at the time of the application made to the county court. The application to the county court was made under section 7, chapter 34, Code 1873, which reads: "When a person has obtained a license to carry on any business, occupation or profession, at any definite place in the assessor's or commissioner's district, and desires to remove to any other place in the township or corporation" (now district or corporation) "where his license was granted, and wishes his license altered accordingly, the assessor or commissioner may make the alteration, except that, when the license is for the sale of ardent spirits, such license shall only be changed by the court which granted the certificate."

The law in force in respect to licenses for the retail of ardent spirits, and which applies to this case, is found in section 2, chapter 2, of the act approved March 15th, 1884 (Acts 1883–4, pp. 605–6). This section, after setting forth the preliminary steps to be taken, and the conditions and restrictions imposed upon "any person, club or corporation who desires a license to sell by retail, or to keep a bar-room or a malt liquor saloon, or to keep an ordinary," proceeds: "And the applicant for any such license shall thereupon present such certificate, so certified, to the judge of the county or corporation in which it is proposed to conduct the business, and such court shall thereupon hear such evidence as may be introduced for or against the application, and hear and determine the question of granting the same. It shall be lawful for any person who may consider that he or they would be aggrieved by the granting of such license, to have himself or themselves entered and made a party defendant to said application, and to defend and contest the same. If the court be fully satisfied, upon the hearing of the testimony for and against the application, that the applicant is a fit person to conduct such

business, and that he will keep an orderly house, and that the place at which it is to be conducted is a suitable, convenient and appropriate place for conducting such a business, the court may, upon the execution by the applicant of a bond in a penalty of not less than two hundred and fifty nor more than five hundred dollars, with good security, conditioned for faithful compliance with all the requirements of this act, grant such license, and thereupon the commissioner of the revenue shall issue the same in such form as may be prescribed by the auditor of public accounts. Either party to such application shall have the right of appeal from the order or judgment of the court granting or refusing such application, during the term at which such application is heard and decided, to the circuit court of said county or corporation. The judge of such circuit court shall take cognizance of such appeal, and may hear the same either in term time or vacation, and may grant the license upon the terms prescribed in chapter 2 of this act, or may refuse the same; and the decision of such circuit court, or of the judge thereof in vacation, shall be final, and no appeal, writ of error, or *supersedeas* shall lie thereto," &c. The remainder of the section is unimportant here. These two statutes must be read and construed together.

In the light of these provisions of the law, the question is whether the application made to the county court of Montgomery county, at the September term thereof, 1885, and upon which, contested as it was, the motion of the applicant to have his license changed from the Yellow Sulphur Springs to the Alleghany House, at Bangs, in said county, was granted, was such an application as entitled either party to the application to the right of appeal from the judgment or order of the county court thereon? In order to an intelligent interpretation of the legislative will, as set forth in the statutes above referred to, and in

order to meet the full demands of the legislative policy
as announced in said acts, and to give such judicial ex-
pression in respect thereto as may serve to notify all
persons interested of their rights under the law, as it now
exists, in respect to the vexatious question of license or no
license to sell by retail, or to keep a bar-room or a malt
liquor saloon, or to keep an ordinary, we may with advan-
tage briefly advert to the early and long-continued legisla-
tive policy on the subject.

From a very early period—certainly as early as 1666—
the subject was committed to the sole judgment and dis-
cretion of the county courts, and their discretion to grant
or refuse licenses could not be interfered with by any
higher courts.    In the earlier statutes we find the language
conferring such absolute discretion quite specific; as, for
instance: "And if such petition appear reasonable, such
court is hereby authorized, *and may, if they think fit*,
grant the petitioner a license," &c., or, "by their *discretion,
shall judge* whether it is convenient to *suffer such a house*
to be set up," &c.

The policy thus distinctly outlined passed unchallenged
until after passage of the act of 1849 (sec. 3, ch. 96, Code
1849), in which the specific terms vesting absolute discre-
tion in the county courts, as found in the earlier acts, was
omitted and the simple permission term "may" was em-
ployed.    Under this act arose the case of *ex parte Yeager*,
11 Gratt. 655, in which Judge Daniel, in an able opinion,
reviewed the several statutes in the light of the authori-
ties, and, speaking for the majority of the court, held,
first, that said section 3, chapter 96, Code 1849, vested in the
county courts a discretion to grant or refuse a license, in
the exercise of which discretion they could not be con-
trolled by the circuit courts, either by *mandamus*, writ of
error, or *certiorari;* second, that though the applicant for
a license might bring himself fully within and up to all

the statute required, so that the court might grant the license if it thought fit, he did not thereby acquire any such right to a license as that the county court might be coerced to grant it; and, third, that though the county court was bound to act upon every application for a license which was made to it, and in case of its refusal to act, the the circuit court would coerce it by *mandamus ;* but when the county court acted, its judgment and discretion could not be controlled. Such was the ruling in *Yeager's case,* which turned mainly on the effect of the word " may," as. used in the act of 1849. Reference has here been made to *ex parte Yeager, supra,* not because it is essential to a proper decision of the case in hand, but because it serves to illustrate the reasons upon which was founded the early, well-defined, and long unbroken line of legislative policy pursued with reference to granting licenses for the retail of ardent spirits, and to call attention to the changes in that policy as wrought by later legislation.

The policy thus early inaugurated in Virginia, and up- held and vindicated by the decision in *Yeager's case,* continued without change until the act of March 3d, 1880, in which the word "shall" was employed instead of the word "may," as in former acts; the effect of which was to make it the duty of the county courts to grant a license to every applicant who came up to all the requirements of the statute. And under the act of 1880 arose the case of *Leighton* v. *Maury,* 76 Va. 865, in which, among other things, it was held that a citizen was entitled to make himself a party to an application for a license, and con- test the same, in the county and circuit courts; and could appear and defend in this court. Next in order came the case of *Ailstock* v. *Page and als.,* 77 Va. 386, which over- ruled *Leighton* v. *Maury,* so far as the latter case recog- nized the right of appeal or writ of error in the *contestant.*

Doubtless the two last-named, variant decisions, largely

contributed to induce the legislature to distinctly mark out the new line of policy which is set forth in said section two, chapter two, Acts 1883-4. By the provisions thus incorporated into the law, when all the preliminary steps have been taken, as required by the act, the application, as heretofore, must first be made to the court of the county or corporation in which it is proposed to conduct the business; and "such court shall thereupon hear such evidence as may be introduced for or against the application, and hear and determine the question of granting the same. And any person who may consider that he or they would be aggrieved by the granting of such license, may have himself or themselves entered and made a party defendant to such application and may defend and contest the same. If the court be *fully satisfied*, upon the hearing of the testimony for and against the application, that the applicant is a fit person to conduct such business, and that he will keep an orderly house, and that the place at which it is to be conducted is a suitable, convenient and appropriate place for conducting *such a business*, the court—that, is, such county or corporation court, as the case may be—*may*, upon the execution by the applicant of a bond, &c., *grant such license;* and thereupon the commissioner of the revenue shall issue the same," &c. And it is declared that either party to such application shall have the right of appeal from the order or judgment of the court granting or refusing such application, during the term at which the application is heard and decided, to the circuit court of such county or corporation; and the judge of such circuit court is required to take cognizance of such appeal, and he is authorized to hear the same either in term time or vacation, and it is expressly provided, that he *may grant the license* upon the terms prescribed in the act, or *may refuse the same;* and it is declared that the decision of such circuit court, or of the judge thereof, in vacation, shall be

final, and no appeal, writ of error, or *supersedeas* shall lie thereto.

The policy thus declared is a departure from not only what was the uniform policy of the State prior to the act of 1880, but is yet a wider departure from the last-named act, and from the rulings of this court in either *Leighton* v. *Maury* or *Ailstock* v. *Page and als.*, *supra.* The result of the change of policy is, that the court of original jurisdiction is not invested with unlimited discretion as formerly ; nor is the right of appeal to the circuit court limited to the applicant only, as by the act of March 3d, 1880, as amended by the act of March 6th, 1882. But the application must first be made to the court of the county or corporation, and from its judgment there is given the right of appeal to the circuit court only.

It is important to observe that the circuit court, or judge thereof in vacation, has no authority to review and either affirm or reverse the judgment of the county or corporation court, as the case may be. On the contrary, by the express terms of the statute, the circuit court, if in term time, or the judge thereof, if in vacation, is authorized either to grant or refuse the *license.* Hence, the appeal to the circuit court, or judge, is nothing more nor less than an application, *de novo*, to the circuit court to do outright, at the instance of the party appealing, what the county or corporation court has refused to do. In other words, the appeal simply serves to transfer the application from one jurisdiction to another and final jurisdiction, and to notify the circuit court that the application was first made, as required, to the county or corporation court, and of the action of such court thereon.

Such being the obvious meaning of the statute, we are unhesitatingly of opinion that the · application to the county court in this case was simply one to have the license changed from a license to keep a bar-room at the

Yellow Sulphur Springs, in Montgomery county, to a license to keep a bar-room at the Alleghany House at Bangs, in said county, and was such an application that any person who might feel that he would be aggrieved by the granting of such application was entitled to have himself or themselves entered as a defendant, and to defend and contest the same. This is manifest from the aforesaid provision (section 7, chapter 34, Code 1873) under which the application was made, and which provides : " When a person has obtained a license to carry on any business, occupation or profession at any definite place in the assessor's or commissioner's district, and desires to remove to any other place in," &c., "and wishes his license altered accordingly, the assessor or commissioner may make such alteration, *except that when the license is for the sale of ardent spirits, such license shall only be changed* by the court which granted the certificate."

Now, the *change* spoken of, and which can only be effected by the court, is a change by which the applicant surrenders the licensed privilege of retailing ardent spirits at the *definite* place designated in his already granted license, and acquires a new license privilege to retail ardent spirits at another and equally definite place, at which the applicant could not keep a bar-room—could not retail ardent spirits—without first obtaining a license. Therefore, the change effected by the court, when the application is granted, is necessarily in the nature of an original application, and is clearly within the spirit and, to say the least, substantially within the very letter of the statute (section two, chapter two, of the act approved fifteenth March, 1884—Acts 1883-4, pp. 605-6).

The insistence on behalf of the plaintiff in error that the provision in the act last referred to, giving the right of appeal to either applicant or contestant, refers to *original* applications for licenses, and is wholly foreign to the judg-

ment appealed from in this case, is wholly untenable. The application for a change of the license from the one place to the other was, in the nature of things, an application to keep a bar-room at a place for which the applicant had no license. A license to keep a bar-room or to retail ardent spirits, to be drank where sold, must be at a definite place. The court, in granting such license, must be *fully satisfied* that the applicant is a fit person to conduct such business, and that he will keep an orderly house, and that the place at which it is to be conducted is a suitable, convenient and *appropriate place* for conducting such business.

The fact that the applicant was already licensed to carry on the business of keeping a bar-room is by no means conclusive of the fact that he was at the time of this application a fit person to conduct such business, and certainly is not conclusive of the essential fact that the place to which he proposes to transfer the business is a suitable, convenient and appropriate place for such business—of all which the court must be *fully satisfied.* A place of public resort for health or pleasure, or both, might be, and ordinarily is, considered a suitable, convenient and appropriate place for such business, while other places in the same district, for numerous reasons that will readily suggest themselves, would be unsuitable, inconvenient, and wholly inappropriate for carrying on the business of keeping a bar-room.

Can it be that the injury resulting to the best interests of a community will be less serious, less objectionable, because such business is introduced into their midst by one who happens to be licensed to conduct such business at another place adjudged to be suitable, convenient and appropriate therefor? We think not. Looked at in whatever light it may be, the application made in this case to the county court was properly appealable to the circuit court. The appeal was taken during the term at which

the application was heard and decided. When the case came on to be heard by the judge of the circuit court, in vacation, the appellee (the applicant in the county court) moved the said judge to dismiss the appeal for want of jurisdiction, but the motion was overruled, and properly overruled. Then the judge of the circuit court proceeded to hear the application, and, in the language of the statute, refused to grant the license, because not "*fully satisfied* by testimony that the place, the Alleghany House, at Bangs, at which the said business is to be conducted, is a suitable, convenient and appropriate place for conducting such business." That action of the circuit judge was final and conclusive, the statute declaring that no appeal, writ of error, or *supersedeas* shall lie thereto. We are therefore of opinion that the writ of error and *supersedeas* was improvidently awarded, and the same must be dismissed with costs to the defendants in error.

WRIT OF ERROR DISMISSED.