## Richmond.

HULVEY AND OTHERS v. ROBERTS AND OTHERS.

November 22, 1906.

Absent, Buchanan, J.

1. INTOXICATING LIQUORS—*Regulating Sale of—Denial of Appeal.*—The sale of liquor may be entirely prohibited, or regulated in any manner the Legislature may deem wise, without supervision or control by the courts. The Legislature may prescribe what courts shall be invested with the power to grant or refuse license to sell liquor, and may deny an appeal to any other court when it is not otherwise provided by the Constitution.

2. APPEAL AND ERROR—*Constitutionality of Law—Decision by Trial Court.*—In order that jurisdiction may be conferred upon this court by virtue of the constitutional provision conferring upon it appellate jurisdiction "in all cases involving the constitutionality of a law as repugnant to the Constitution of this State, or of the United States," it must appear that the constitutionality of the law was called in question and decided in the trial court. Error committed in the construction and interpretation of a statute will not of itself confer jurisdiction upon this court, but the constitutionality of the statute, as distinguished from its interpretation, is the source of appellate jurisdiction.

3. LOCAL-OPTION ELECTION—*Qualification of Electors—Validity of Statute—Appeal.*—Where the validity of a law under which a local-option election was held was not called in question in the trial court, but the election is sought to be set aside on the ground that the judges of election put a wrong interpretation upon the law, and permitted persons to vote who were not entitled to that privilege, the decision of the Circuit Court upon that question is final. No constitutional question being raised or decided by the Circuit Court, no appeal lies to this court.

Error to a judgment of the Circuit Court of Augusta county in case of a contested election. To a judgment adverse to the contestants they assign error.

*Writ of error dismissed.*

The opinion states the case.

*Patrick & Gordon* and *Hurst Glenn,* for plaintiff in error.

*J. M. Perry, Quarles & Pilson* and *H. H. Blease,* for the defendants in error.

WHITTLE, J., delivered the opinion of the Court.

The writ of error in this case was allowed by one of the judges of this court to the judgment of the Circuit Court of Augusta county, declaring valid an election under chapter 25, Virginia Code (1904), against licensing the sale of intoxicating liquors in Basic City.

We are met at the threshold of the inquiry by the question of jurisdiction.

Section 586a (Code, 1904) declares that "in judging of such election and return the court shall proceed on the merits thereof, and decide the same on the constitution and laws and according to the right of the case, and enter such order as will carry its decision into full and complete effect. And the judgment of said court shall be final."

In *Lester* v. *Price,* 83 Va. 648, at page 652, 3 S. E. at page 530, it is said: "From a very early period—certainly as early as 1666—the subject (licensing the sale of liquor) was committed to the sole judgment and discretion of the county courts, and their discretion to grant or refuse licenses could not be interfered with by any higher courts. In the earlier statutes we find the language conferring such absolute discretion quite specific, as, for instance: 'And if such petition appear reasonable, such court is hereby authorized, *and may, if they think fit,* grant the petitioner a license,' etc., or 'by their *discretion, shall judge* whether it is convenient to *suffer such a house* to be set up,' " etc.

See Virginia Code (1849), pages 443, 444, section 3, and Acts 1669-'70, pages 22, 239.

This policy seems to have been pursued and to have remained unchallenged until the case of *ex parte Yeager*, 11 Gratt. 655 (decided in 1854), arose. In that case Judge Daniel, who delivered the opinion of the court, reviews the history of legislation in regard to granting licenses, in light of the earlier decisions, and holds that the act (Code, 1849, chapter 96, section 3, page 443) "vests in the county courts a discretion to grant or refuse a license to keep a tavern, in the exercise of which discretion they cannot be controlled by the Circuit Courts, either by *mandamus,* writ of error or *certiorari.*"

So in *French* v. *Noel,* 22 Gratt. 454, in prohibition, the same doctrine was reaffirmed; and it was said that the action of the Circuit Court allowing an appeal to the order of the County Court in such case was *coram non judice.*

In *Leigton* v. *Maury,* 76 Va. 865, the court construed the act of March 3, 1880 (Acts 1879-'80, page 147), and held that it was the purpose of that enactment to depart from the policy of former statutes as construed in *Yeager's case, supra.* In that case the court observes: "That statute says the County Court *'shall grant* the license,' if the applicant brings himself within the requirements, and the Circuit Court *'may grant* the license,' means the Circuit Court shall have the jurisdiction to do so, and must do so, if the applicant brings himself within the requirements." The act was declared to be mandatory, and the right of appeal to the Circuit Court absolute.

In *Thon* v. *Commonwealth,* 31 Gratt. (Va. R. Ann.) 887, will be found a comprehensive note on the subject of intoxicating liquors in general; and at page 895 it is said: "In *Ailstock* v. *Page,* 77 Va. 663, the court expressly overrules *Leigton* v. *Maury,* 76 Va. 875, so far as that case decides that the contestant is such a party in interest that he is entitled to an appeal or writ of error.

"In *Ex parte Lester,* 77 Va. 663, it was held that under the

act of 1882 the applicant may appeal to the Circuit Court, or
he may, upon bill of exception taken at the trial, apply to the
Circuit Court for a writ of error and supersedeas; and if the
Circuit Court also erroneously refused the license, its decision
is reviewable by the Supreme Court upon appeal, or writ of
error and supersedeas, as in other cases; the applicant is a
party directly in interest in the decision refusing the license
and comes within the letter of Code (1873), chapter 178, sec-
tion 2; but this is not true of the contestant, who cannot appeal.
See also *Haddox* v. *County of Clarke,* 79 Va. 677." It is also
said that "under the Acts 1883-'84, page 605, application for
license to retail liquor must be made to the County Court, and
either applicant or defendant may appeal of right from the de-
cision to the Circuit Court where the application is heard *de
novo,* and no appeal lies from the decision of the latter court."

The case of *Lester* v. *Price, supra,* construed the act of
1883-'84. It is there held that no appeal lies to the decision
of the Circuit Court, and the writ of error and supersedeas
were dismissed as having been improvidently awarded.

The court, as at present constituted, has on several occasions
refused to grant writs of error in this class of cases; so that
the doctrine of *Lester* v. *Price* represents the present state of
the law on the subject.

In the recent case of the *City of Danville* v. *Hatcher,* 101
Va. 523, 44 S. E. 723, this court had occasion to consider the
question of state control of the traffic in intoxicating liquors.
It was there held that the sale of liquor is not one of the privi-
leges or immunities of citizenship guaranteed by the constitu-
tion of the United States, or the Fourteenth Amendment
thereof; that the regulation of the subject is completely within
the police power of the state; that the sale of liquor may be en-
tirely prohibited, or regulated in any manner the Legislature
may deem wise, without supervision or control by the courts.

The previous legislative and judicial policy of the state with
respect to governmental control of intoxicating liquor is em-

phasized by section 62 of the present constitution, which declares:

"The General Assembly shall have full power to enact local option or dispensary laws, or any other laws controlling, regulating or prohibiting the manufacture or sale of intoxicating liquors."

It is conceded in the petition for the writ of error in this case that under section 581 of the Code, by virtue of which the proceeding under review was instituted, there can be no appeal from the judgment of the trial court unless it is provided for in the constitution.

So much of that instrument as need now be considered is as follows: "The Supreme Court of Appeals . . . shall have original jurisdiction in cases of *habeas corpus, mandamus* and prohibition; but in all other cases in which it shall have jurisdiction it shall have appellate jurisdiction only. Subject to such reasonable rules as may be prescribed by law, as to the courts of appeal, the limitation as to time, the security required, if any, the granting or refusing of appeals, and the procedure therein, it shall, by virtue of this constitution, have appellate jurisdiction in all cases involving the constitutionality of a law as being repugnant to the constitution of this state or of the United States; . . ." Constitution of Virginia, Article VI, section 88.

In order that jurisdiction may be conferred upon this court by force of the constitutional provision it must appear that the constitutionality of a law was called in question and decided in the trial court; and error committed in the construction and interpretation of a statute will not of itself confer jurisdiction upon this court; but the constitutionality of the statute, as distinguished from its interpretation, is the source of appellate jurisdiction. *Baldwin* v. *Fries* (Mo.) 15 S. W. 760; *Savannah, &c., R. Co.* v. *Hardin* (Ga.) 35 S. E. 681; *Ross* v. *Hawkeye Ins. Co.* (Iowa) 34 L. R. A. 466; 2 Cyc. 585, 1029.

Now in this case there is not a word said in the petition to

the Circuit Court with respect to the constitutionality of section 62 of the Code, or of any other statutory provision. It is claimed that persons were allowed to vote at the election under review whose poll taxes had not been paid according to law as a prerequisite to their right to vote; and again the election is assailed because the judges allowed a number of persons to vote in said election whose poll taxes had not been paid within six months prior to the election, as required by the constitution and laws of the state of Virginia, although each and every one of such persons was challenged when he presented himself at the polls for the purpose of casting his ballot. These averments charge the judges of election with having made an erroneous decision with respect to the rights of certain persons to vote, but nowhere call in question the validity of the statute bearing upon the subject as being repugnant to the constitution. There is nowhere in the petition a suggestion or intimation that any part of the statute law of the state bearing upon the subject of elections is repugnant to the constitution; but the whole contention is rested upon the proposition that error was committed in the interpretation of the constitution and laws.

It is true that the answer of the defendant avers that section 62 of the Code of Virginia, which requires all persons to pay their poll taxes six months prior to a local option election in order to be qualified to vote at such election, is unconstitutional and void in this respect, the contention being that the persons mentioned in the complaint were qualified voters even if they had not paid their poll taxes six months prior to the election. But the case was not heard upon the answer. The order of the court appealed from is as follows: "This day came the petitioners as well as the contestees by their attorneys, and thereupon the said contestees, John Roberts and others ,demurred generally to the petition of the contestants, W. J. Hulvey and others, and the said contestants joined in said demurrer; whereupon, the same being argued and maturely considered, it is adjudged and ordered by the court that said demurrer be sus-

tained, that said election be and is hereby declared void, and that said petition be dismissed, and that the contestees recover against the contestants or petitioners their costs in this behalf expended."

The grounds of demurrer are specifically stated. The sixth ground is as follows: "If it were true, as alleged, that the judges of election refused to follow the list of voters certified by the clerk of the Circuit Court of Augusta county as those who had paid the state poll tax for the years 1903-'04-'05 six months prior to the 26th day of April, 1906, and permitted persons to vote who had not paid their state poll taxes six months prior to said election (local-option election), this is not a good ground for either setting aside the returns or the election, or declaring them, or either, invalid and void; and those persons mentioned in specification 5 as disqualified because they were not on said list were not legally disqualified from voting on account of this, as they could have been legal and qualified voters at said local-option election without their names being on said list, and it will be noted that no other reason is assigned and stated for their disqualification."

The ninth ground of demurrer is: "Because the persons mentioned in specification 10 were not disqualified from voting for the reasons stated therein, and were entitled to vote. Being registered they were entitled to vote at said local-option election, whether they had paid their state poll taxes six months prior thereto, or within six months prior thereto.

So much of section 62 (Code, 1904) as applies to this case is as follows: "Every male citizen of the United States, twenty-one years old, who has been a resident of the state two years, of the county, city or town one year, and of the precinct in which he offers to vote thirty days next preceding the election, and who has been duly registered and has paid the state poll tax, as required by law, and is otherwise qualified under the constitution and laws of this state, shall be entitled to vote for members of the General Assembly and all officers elected by the

people, and in any special election or local-option election in any county, district, city or town, except when otherwise provided by law; . ."

It appears from the petition to this court that there has been much diversity of opinion among the Corporation and Circuit Court judges of this state with respect to the proper interpretation of section 62 with reference to local-option elections; but it does not appear upon what ground the learned judges referred to rested their decisions. The theory of the contention of plaintiffs in error upon this point, as we understand it, is that by a proper construction of section 62 certain voters should have been excluded from voting at the election under consideration because they had not paid their poll tax as provided by section 62; and that section 62 was disregarded by the judge of the Circuit Court of Augusta county because, in his opinion, it was in conflict with the suffrage clause of the constitution, and that upon a proper construction of that clause the voters excluded should have been permitted to vote, although they had not paid the poll tax required by law. But, as we have seen, no such issue was presented by the pleadings for the determination of the Circuit Court. *Non constat,* the judgment of the court was based upon the construction of the statute, and not upon its invalidity.

There are cases which have been decided by the Supreme Court of the United States which throw light upon the point we have been endeavoring to present.

In *Delmas* v. *Merchants Ins. Co.,* 14 Wall. 661, 20 L. Ed. 757, the effort was made to sustain the jurisdiction of the Supreme Court over the case upon the ground that it involved the validity of a contract the consideration for which was Confederate money, and also upon the ground that a state constitutional provision which declared all contracts, the consideration of which was Confederate money, to be void. With respect to the first contention the Supreme Court held: "A decision of a state court that a contract, of which the consideration was

Confederate money, was void, does not of itself raise one of those Federal questions which belong to this court to settle, when made upon the general principles of public policy." For, said the court, "So long as they in those opinions placed the invalidity of this class of contracts on the ground of a public policy existing at the time the contract was made, or so long as they left us to infer that such was the ground, having once before so decided, the decision presented no question over which we had any revisory power. But when, going a step further, they expressly rest the decision of the same question on the constitutional provision we have quoted, and on no other ground, the question necessarily arises is that provision in conflict with the constitution of the United States? And the answer to this question depends solely on the validity of the contract when made; for, if valid then, the Federal constitution protects it from all subsequent acts of state legislation, whether in the form of constitutional or ordinary legislative enactments."

It will be recalled that the provision of the Federal constitution with respect to the impairment of contracts is very similar to the language of our constitution conferring jurisdiction upon this court. "No state," says that instrument, "shall . . . pass any bill of attainder, *ex post facto* law, or law impairing the obligation of contracts." Courts may blunder in the construction of contracts, may deny parties rights secured to them by contract, but under this provision of the constitution nothing confers upon the Supreme Court of the United States authority to review the decision of a state court, unless the state has undertaken through some of its lawmaking agencies to pass a law impairing the obligation of contracts.

With reference to the Fourteenth and Fifteenth Amendments, and rights arising under them, it may be observed it is otherwise. "No state," says the Fourteenth Amendment, "shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property without due

process of law, nor deny to any person within its jurisdiction the equal protection of the laws." The Fifteenth Amendment provides that "the right of citizens of the United States to vote shall not be denied or abridged by the United States or by any state on account of race, color or previous condition of servitude." And with respect to these two amendments the Supreme Court has held that the prohibitions have reference to state action exclusively, and not to any action of private individuals, and that a state may act through different agencies, either by its legislative, its executive or its judicial authorities, and prohibitions of the amendment extend to all actions of the state denying equal protection of the laws, whether it be action by one of these agencies or by another. *Ex parte Virginia,* 10 Otto 313, 25 L. Ed. 667.

But with respect to the obligation of contracts it is only by virtue of a law which impairs their obligation that the Supreme Court of the United States acquires jurisdiction to review a judgment of a state court; and so in the very similar language employed in our constitution with respect to the jurisdiction of this court. The case must involve the constitutionality of a law as being repugnant to the constitution of this state or of the United States in order that the constitution may *ex proprio vigore* confer jurisdiction upon this court to review for that cause a judgment of an inferior tribunal.

For these reasons we are of opinion that the writ of error was improvidently awarded, and must be dismissed.

*Dismissed.*