Syllabus.

## 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

### LEIGTON v. MAURY.

July 28, 1882.

1. CONSTRUCTION OF STATUTES—*Liquor Licenses—County courts.*—The object of the statute, Acts 1879–80, p. 148, was to depart from the former laws on the subject of licenses to sell ardent spirits, as construed by this court in *Yeager's case*, 11 Gratt. 655, where it was held that the county courts had unlimited discretion on the subject, and that their decisions were not liable to review by any appellate tribunal. The present statute is mandatory, and the right of appeal to the circuit court absolute. The appeal is a transfer of the case to the circuit court, where it is heard *de novo.*

2. IDEM—*Idem—Circuit courts.*—That statute says the county court "*shall grant* the license," if the applicant brings himself within the requirements, and that the circuit court "*may grant* the license." The words "*may grant the license,*" mean the circuit court shall have the jurisdiction to do so, and must do so, if the applicant brings himself within the requirements; and they confer no arbitrary discretion, but a sound, judicial discretion, subject to review as in other cases provided by *Code* 1873, *page* 1136, §§ 2 and 3.

3. IDEM—"*May.*"—The word "may" is sometimes construed as mandatory and sometimes as permissive, as will best carry into effect the true intent and object of the legislature.

4. IDEM—IDEM—*Case at bar.*—Circuit court certifies it is not "fully satisfied that the place is suitable for a bar-room and for retail of ardent spirits." The county court certified the same. The testimony is conflicting. It is contended, on the one hand, that the sale of ardent spirits at the proposed place will injure the large and precarious business of making charcoal iron in the vicinity, and so detriment the community. On the other hand, it is answered that "the legislature has adopted the system of licensed sales of liquor throughout the State," and that this policy ought not to be defeated by the personal objections and private views of individuals, however extensive and important their interests and business may be.

HELD:

1. In deciding this question, all the circumstances, whether of a general or limited nature, may be taken into consideration. *Lewis* v. *Washington*, 5 Gratt. 275.

2. Though the primary object may have been to raise revenue, this cannot be accomplished to the detriment of important industrial enterprises.

3. Where the testimony conflicts, and in a doubtful case, the appellate tribunals will always lean in favor of the concurring judgments of the tribunals below.

4. A citizen is entitled to make himself a party to the proceedings in the county and circuit courts and oppose the granting of the license. And he can appear and defend in this court, and should be served with process upon appeal, writ of error, and supersedeas.

5. In such case such citizen renders himself liable to costs, and may recover costs as in other cases.

6. In the county court, no costs were given; in the circuit court costs were refused to either party; and, under all the circumstances, the judgment of the county court ought to be affirmed without costs to either party.

Error to judgment of the judge of the circuit court of Botetourt county rendered in vacation on an appeal by John R. Leighton from the decision of the county court of said county refusing his application for license to sell liquor by retail at "Old Forge," in that county. The facts are fully stated in the opinion of the court.

*G. W. & L. C. Hansbrough* and *Attorney-General F. S. Blair,* for the appellant.

*Glasgow & Glasgow,* for the appellee W. F. Maury.

STAPLES, J., delivered the opinion of the court.

The appellant applied to the county court of Botetourt for a license to keep a bar-room and to sell liquor by retail at a place known as the "Old Forge," in that county. This

application was opposed by William F. Maury, who, upon his own motion, was admitted as complainant. The court, after hearing the testimony on both sides, refused the license, not being fully satisfied "that the applicant is a fit person and that the place is suitable and convenient." The appellant, thereupon, during the term entered an appeal to the circuit court. No bill of exceptions was, however, taken to the ruling of the court, nor do the records contain a certificate of the facts proved or of the evidence adduced in the county court. Subsequently the appeal came on to be heard before the judge of the circuit court in vacation; who having heard the evidence for and against the application, also refused the license, "not being fully satisfied that the place is suitable and convenient for a barroom and to sell by retail." To this refusal the appellant excepted, and upon his motion the learned judge certified the evidence; and, thereupon, the appellant obtained an appeal from one of the judges of this court.

The case, as thus presented, brings before this court for the first time the proper interpretation of the statute upon the subject of licenses for the retail of ardent spirits, found in Acts of 1879–80, p. 148. It is there provided that if the court to which application is made for a license *be fully satisfied*, upon hearing the testimony for and against the application, that the appellant is a fit person and that the place of business is suitable and convenient, it shall, upon the execution of a bond by the appellant with good security, etc., grant the license. If the county court or corporation court shall refuse to grant the application, the tax shall be refunded, and the party aggrieved may, during the term at which such refusal is entered, appeal to the circuit court of said county or corporation in term time, or vacation, and the judge thereof shall take cognizance of the appeal and may grant the license upon the terms required by this act.

It will be observed that when the applicant brings himself within the provisions of the statute—in other words, if he shows that he is an fit person, and that the place of business is suitable and convenient—it is the duty of the county court to grant the license.  "*It shall grant the license*" is the mandate of the act.  The court is of course invested with a sound judicial discretion in determining whether the applicant is a fit person and the place suitable and convenient, but if fully satisfied upon that point, it has no right to refuse the license, because the judge may consider the sale of ardent spirits contrary to a sound public policy, or injurious to the morals of a community.  These are considerations that may properly address themselves to the legislature in framing the laws, and not to the courts in expounding them.  The present statute, it is apparent, is a clear departure from former laws on the subject, as construed by this court in *Yeager's case*, 11 Gratt. p. 655.  For, in that case it was held that the county courts of Virginia were clothed with an unlimited discretion in granting or refusing license for the retail of ardent spirits, and their decisions in such cases were not the subject of review by any appellate tribunal.  The framers of the present statute were, no doubt, familiar with the decision in Yeager's case and intended to change the rule established by that decision.  In thus changing its policy, the legislature very probably considered it safer and more conducive to the public welfare to entrust the sale of ardent spirits to fit persons at suitable places—with the additional advantages derived for a tax upon the business, rather than endure the evils of a clandestine and illicit traffic by irresponsible persons who contributed nothing to the public revenue.  But whatever may have been the motives of the legislature, with which we have nothing to do, the statute is mandatory in its terms and the right to appeal to the circuit court absolute and unconditional.  It is very true the statute does not say that

the appeal is of right. It however uses language equally emphatic. It declares that the applicant *may during the term* appeal to the circuit court, and the judge of that court *shall take cognizance of the appeal.* The appeal is therefore but a transfer of the case to another tribunal where it is heard *de novo*, not upon errors assigned, but upon the testimony of witnesses, as in cases of roads, mills, profit of wills, and the like. The judge of the circuit court does not undertake to reverse or affirm the judgment of the county court, but it grants or refuses the license in the exercise of the jurisdiction conferred upon it by the statute.

The next question is, whether in the event of a refusal by the circuit court or judge to grant the license, an appeal or writ of error and *supersedeas* lies to or from this court, as in other cases. It has been argued here that the judgment of the circuit court is final and conclusive, for the reason that whilst the statute declares that the county court *shall* grant the license, if the applicant brings himself within the requirements, it at the same time declares that the circuit court may grant the license, and the conclusion is sought to be deduced that the legislature designed to invest the circuit courts with the same discretionary authority which was conferred upon the county courts under former laws. An examination of the opinion of the court in Yeager's case will show that the decision was not based upon the words "may grant such license," used in the act of 1849.

Counsel in that case had urged on one side that "may" meant "shall," and on the other hand it was urged that the word was used in its popular sense and was employed to grant an authority coupled with a discretion which was not the subject of reversal by any other tribunal. Judge Daniel undertook to solve the difficulty by referring to the uniform legislation on the subject from the earliest history of the State down to the revisal of 1849. This legislation, as he in-

sisted, unmistakably shows that the whole subject of granting or refusing license was left to the discretion and judgment of the county court, and that there was nothing in the statute of 1849 to indicate a change of legislative policy; on the contrary, the use of the word " may grant such license," clearly showed that no such change was contemplated.

Indeed, the word "may" is sometimes construed as mandatory, and sometimes as permissive, as will best carry into effect the true intent and object of the legislature. Generally, it is construed as mandatory when the legislature means to impose a positive duty, or when the public is interested, or where third persons have a claim that the act shall be done. In England, it has been held that where a statute confers an authority to do a judicial act in a particular case, it is imperative on those so authorized to exercise the authority when the case arises and its exercise is duly applied for by a party interested and having the right to make the application. In such cases the word "may" is not used to give a discretion, but to confer a power upon the court and judges, and the exercise of such power depends not upon the discretion of the court or judges, but upon the proof of the particular case out of which such power arises. *McDaugall* v. *Paterson,* 73 Eng. C. L. R. 755; Sedgwick on Construction of Statutes, 375; *Supervisors* v. *United States,* 4 Wallace, 435. And so in the case before us, where it is said the circuit court or judges *may* grant the license, all that is meant is that such court or judge shall have the power—jurisdiction—to do so. The words are entirely appropriate in conferring an appellate jurisdiction, being used to confer an authority, and that authority must be exercised if the circumstances are such as to call for its exercise by a party having the right to make the application. It is not an arbitrary, capricious discretion vested in the judge of the circuit court, but a sound, judicial discretion, subject to review as in other cases.

The county court *shall* grant the license is the mandate of the statute where the applicant brings himself within its requirements. Suppose it refuses, and the applicant takes his appeal, is not the circuit court bound to correct the error and grant the license? Is it not bound to the same extent precisely as the county court? When the legislature made it mandatory upon the county court to grant the license *in* a given case, and authorized an appeal in case of refusal, it made it equally mandatory upon the circuit court to grant the license; and if the latter court renders an erroneous decision, it is difficult to understand why the party aggrieved may not have redress in this court. The legislature has very properly conferred an appeal of right from the county court to the circuit court by special enactment, for the reason that no such right is elsewhere given. But the case being once in a circuit court, no such enactment was proper or necessary; not proper, because an appeal of right does not lie in any case in this court; not necessary, because a right of appeal, writ of error, and supersedeas upon errors assigned to and from this court is provided for by the general statute on the subject. Code of 1873, p. 1136, § 2.

Statute declares that a person who is a party to any civil case in which there is a final judgment, decree, or order, may present his petition for an appeal, writ of error, or supersedeas. It will be understood, of course, that where a mere pecuniary matter is involved, the subject of controversy must be $500 or upward. This, however, is not a case of that sort; no mere pecuniary matter is involved. It is a final judgment or order in a civil case touching the exercise of a right or privilege conferred by an act of the legislature. It is covered by the express terms of the statute already cited relating to appeals, &c., and the right to appeal can only be taken away by express enactment or by implication equally plain. We are, therefore, of opinion

that an appeal of right lies from the county court to the circuit court whenever the license is refused; and if the circuit court also erroneously refuses the license, the decision is the subject of review by this court upon appeal, or writ of error and supersedeas, as in other cases. Whether the person who enters himself a party defendant, and resists the application, is equally entitled to an appeal, is a question we are not called upon to decide here.

The case in hand is therefore properly before us, and the question is presented whether the judgment of the circuit court shall be affirmed or reversed. The judge of that court certifies that he is not fully satisfied the "place is a suitable one for a bar-room and for the retail of ardent spirits." The evidence shows that Wm. F. Maury, who opposes the application, is superintendent of the Salisbury Furnace, in Botetourt county, engaged in making charcoal iron, and has in his employment about one hundred and eighty operatives. The place of the proposed bar-room is about two miles from the furnace and four miles from the ore banks, where some forty or fifty hands are constantly employed. It appears that in hauling the ore from the ore banks to the river, whence it is transported to the furnace, the teams of the company will necessarily pass along the public road very near the bar-room. It is claimed that making iron from ore is a delicate business, requiring the exercise of much care and the attention of discreet and sober men, and that the retail of ardent spirits in the neighborhood will lead to drunkenness and insubordination among the employees, and seriously interfere with the successful operation of the furnace.

In answer to this the learned counsel for the appellant insists the legislature has adopted the system of licensed "sales of liquor throughout the State, and this policy ought not to be defeated by the personal objections and private views of individuals, however extensive and im-

portant their private interests and business may be." A very large discretion is vested in the county and circuit courts in determining not only the fitness of the applicant, but whether the place is suitable and convenient. They must be fully satisfied on the subject before the right to the license exists. In deciding this question all the circumstances, whether of a general or limited nature, may be looked to and the interests of even a single citizen and his family may be taken into consideration. *Lewis* v. *Washington,* 5 Gratt. 275. If it be conceded that the primary object of the legislature was to derive a revenue from the sale of ardent spirits, it cannot be accomplished to the detriment of important industrial enterprises which might be seriously affected by the establishment of bar-rooms and the unrestricted sale of ardent spirits. That which disturbs the business of a few persons may injuriously affect the prospects of an entire community. Every well conducted foundry or furnace, every factory where useful products are fabricated, is an advantage to the State in the employment given to labor, in the market created for supplies, and in the development of the agricultural and mineral resources of a country. Such enterprises are almost necessarily under the control of a few private persons; they require a large outlay of capital, and these establishments should be encouraged by the efficient administration of wholesome and salutary laws. No one can deny that the sale of ardent spirits in the neighborhood of such enterprises may and often does result in very serious injury, especially in a country where labor may be scarce and difficult to obtain and where there is a want of necessary police force to give protection to life and property.

In this case we have the concurring decisions of both the county and circuit judges adverse to the applicant. The one is a resident of the county in which the license is sought, and the other of an adjoining county, both ac-

quainted with the witnesses, the locality and all the surrounding circumstances. It would be going very far indeed for this court to reverse both these tribunals upon a mere certificate of the evidence where the witnesses are divided in open court. In *Horne* v. *Richards,* 2 Call. 507, it was held that where in a petition for a mill the witnesses are divided upon the question of the establishment of a mill and the county and district courts concur in opinion, the appellate court will affirm the decision. The same rule was followed in *Atkinson* v. *Ball,* 5 Ran. 446. In that case Judge Cabell said witnesses should be weighed, not numbered, and in estimating the weight of testimony the judges of the superior court of law who see and hear the witnesses examined, possess advantages we have not. The justices of the county court have the stated advantages as the judges of the superior courts of law; to which may be superadded an intimate personal knowledge of the character of each witness. In a doubtful case, therefore, upon a subject of this nature (change of a road), it should always lean in favor of the concurring judgments of these two tribunals. See also *Dudley* v. *Dudley,* 3 Tyler.

For these reasons, we are of opinion that the judgment of the circuit court must be affirmed. Another question is, however, presented for our consideration. As has been already stated, William F. Maury entered himself as a defendant both in the county and circuit courts, and opposed the application for a license. He has also appealed here by counsel and was entered as a party upon the record without objection, although no process was served upon him, as it appears, by direction of the appellant's counsel.

Upon this state of facts, we are of opinion that Mr. Maury had the right to make himself a party to the proceeding, both in the county and circuit courts, and oppose the granting of the license. It was a matter in which he was personally interested, and one in which every citizen

is more or less concerned. Mr. Maury having been party on the record in circuit court, it was competent for him to appear and defend in this court, and he ought, properly, to have been served with process upon the appeal, writ of error and *supersedeas.* In *Wingfield* v. *Crenshaw,* 3 H. & M. 445, Judge Roane said an application for a road might be contested in the county court by any person who is interested in defeating it. Any person so contesting is thereby made competent to carry the case to a supreme tribunal. And in *Mayo* v. *Turner,* 1 Mun., it was held that if in the opinion of the jury of inquest the health of the neighbors will not be annoyed by the erection of a mill-dam, a person supposing himself to be aggrieved thereby may appear as a contestant, and contest the finding of the jury by their evidence."

In all these cases the person in making himself a party, however, renders himself liable for costs, and may also recover costs as in other cases. In the present case, it does not appear what was the decision of the county court with respect to the costs. It appears that the circuit judge refused to allow costs to either party. He had no doubt, satisfactory reasons for this conclusion to which he came, and we are not disposed to interfere with his decision. The costs in this court have been all paid by the appellant, except an attorney's fee. Under all the circumstances, we think no such fee should be allowed here, and that the judgment of the court ought to be affirmed without costs to either party.

JUDGMENT AFFIRMED.