CARTER H. HARRISON, Mayor, *et al.*

*v.*

THE PEOPLE *ex rel.* Henry Raben.

*Opinion filed June 21, 1906.*

1. DRAM-SHOPS—*discrimination in granting licenses must be based upon reasonable grounds.* Authorities empowered by ordinance to grant dram-shop licenses upon certain terms and conditions cannot arbitrarily refuse the same, nor discriminate between persons, places and regulations pertaining to the business, without reasonable grounds therefor.

2. SAME—*authorities have reasonable discretion in granting licenses.* Unless expressly restricted by the terms of the ordinance, authorities vested with power to grant dram-shop licenses have a reasonable discretion in granting or refusing them.

3. SAME—*refusal to grant license to keep saloon next to school grounds is reasonable.* Refusal by the mayor to grant a license to keep a saloon on premises which immediately adjoin public school grounds is a reasonable exercise of his discretionary power, even though the ordinance provides that he shall grant licenses to persons applying in writing, giving a bond and furnishing satisfactory evidence of their good character, without expressly vesting him with any discretion in the matter.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. ELBRIDGE HANECY, Judge, presiding.

The People, on the relation of Henry Raben, filed a petition in the superior court of Cook county against the appellants, as mayor, city clerk and city collector of the city of Chicago, for a writ of *mandamus* to compel them to issue to

June, '06.] HARRISON v. THE PEOPLE. 151

the relator a license to keep a dram-shop at 345 East Division street, in said city. The respondents answered the petition, and upon a hearing the court awarded the writ as prayed. On appeal to the Appellate Court for the First District that order was affirmed, and the respondents now bring the case to this court by a further appeal.

The case was heard in the superior court upon an agreed state of facts, as follows:

"The only ordinance of the city of Chicago regulating the matter of granting licenses to keep dram-shops is the following:

"'1175. The mayor of the city of Chicago shall from time to time grant licenses for the keeping of dram-shops within the city of Chicago to persons who shall apply to him in writing therefor and shall furnish evidence satisfying him of their good character. Each applicant shall execute to the city of Chicago a bond, with at least two sureties to be approved by the city clerk or city collector, in the sum of $500, conditioned that the applicant shall faithfully observe and keep all ordinances in force at the time of the application or thereafter to be passed during the period of the license applied for, and will keep closed on Sundays all doors opening out upon any street from the bar or room where such dram-shop is to be kept, and that all windows opening upon any street from such bar or room shall on Sundays, except between the hours of one o'clock A. M. and five o'clock A. M., be provided with blinds, shutters or curtains, so as to obstruct the view from such street into such room. Nor shall any windows be painted or covered in any manner so as to obstruct the view from such street into such room. No application for a license shall be considered until such bond shall have been filed.'

"It is admitted that the petitioner made his application for a license to keep a dram-shop at the place in question, and that in so doing he did everything required of him by the laws or ordinances; that no question was or is made of

the sufficiency of the bonds tendered by petitioner, or of his good character, and that his application was refused solely because the place where he proposed to keep his dram-shop is immediately next to the grounds of the Lyman Trumbull school, one of the public schools of the city, the mayor being of opinion that he has a right to refuse a license when, in his judgment, the place in which it is proposed to keep a dram-shop is one where a dram-shop will be a detriment and an injury to the neighborhood and offensive to the best interests of society. It is further admitted that the south school building has not been used regularly in the past two years; that it has not been used but two or three times, though it is ready for use; that some of the rooms in the north school building are not used, as there are not enough scholars to require the use of the whole building; that the property is held for school purposes and intended for use as a school, and that the location of the proposed saloon with reference to the school and the surroundings is truthfully set out in the following plat." (The plat referred to is immaterial in the decision of the case.)

WILLIAM D. BARGE, (JAMES HAMILTON LEWIS, Corporation Counsel, of counsel,) for appellants.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The only question presented by this record for our decision is whether, under the ordinance set forth in the foregoing statement of facts, the mayor of the city of Chicago is authorized to exercise a discretion in the granting of a license to keep a dram-shop, or whether, on the presentation of an application for such a license showing that the requirements of the ordinance have been complied with, he is compelled to grant the license.

It must be conceded that the business of keeping a saloon or dram-shop is one which no citizen has a natural or inherent right to pursue, but is the subject of legislative restric-

tion, regulation and control. (*Schwuchow* v. *City of Chicago,* 68 Ill. 444.) Of course, where an ordinance authorizes the issuing of a license to keep a dram-shop upon certain terms and conditions, the authorities authorized to grant the license cannot arbitrarily refuse the same, nor discriminate between persons, places and regulations pertaining to the business, without reasonable grounds therefor. (*Zanone* v. *Mound City,* 103 Ill. 552.) We are, however, of the opinion that there is vested in such authorities, unless expressly restricted by the language of the ordinance, a discretionary power, which may be reasonably exercised in the granting or refusing to issue a license. The question does not seem to have been directly passed upon by this court, but the authorities from other States fully sustain this reasonable construction. In many of these cases the language of the law or ordinance authorizing the granting of the license is, that upon the doing of certain things the licensing officer or body shall grant the license; but the decisions are to the effect that nevertheless a discretion exists in such officer or body, and that they will not be compelled to issue a license when in their discretion, reasonably and fairly exercised, the license has been refused. (*Leighton* v. *Maurey,* 76 Va. 865; *People* v. *Board of Excise,* 61 N. Y. Sup. 798; *Sherlock* v. *Stuart,* 96 Mich. 193; *Attorney General* v. *Justices,* 27 N. C. 315; *Muller* v. *Commissioners,* 89 id. 17; *Hillsboro* v. *Smith,* 110 id. 417; *Perry* v. *Salt Lake City,* 7 Utah, 143; *Eslinger* v. *East,* 100 Ind. 434.) This question was before the Appellate Court for the First District in the case of *Swift* v. *People,* 63 Ill. App. 453, and that court, in a well considered opinion, held that the mayor of the city of Chicago could not be compelled by *mandamus* to issue a license to keep a dram-shop in a neighborhood occupied almost exclusively by residents and where a saloon would be a nuisance.

The trial court in this case held propositions of law to the effect that the mayor had the right to exercise a discretion in granting or refusing the license, among others the

following: "It is within the mayor's right to refuse to grant a license to keep a dram-shop at a place where it will be so close to a school as to be a detriment and injury to the neighborhood or offensive to the best interests of society." Notwithstanding this holding, which we think a correct announcement of the law, the writ was granted. The judgment could only be reconciled with the holdings as to the law of the case upon the theory that the discretionary power vested in the mayor had been abused. But that position is untenable. By the stipulation it is agreed that the relator sought a license to keep his saloon immediately next to the grounds of the Lyman Trumbull school, one of the public schools of the city. The mayor was of the opinion that he had a right to refuse a license when in his judgment the place in which it is proposed to keep a dram-shop will be a detriment and injury to the neighborhood and offensive to the best interests of society. It is true that it is stipulated that the school building has not been used regularly in the past two years, though it is ready for use, and that some of the rooms in the north school building are not used, as there are not enough scholars to require the use of the whole building. Both school buildings are on the same grounds, and it is agreed that the purpose is to establish a saloon in the immediate vicinity of these school buildings and the play-grounds. We apprehend that no one will seriously contend that a saloon adjacent to or in the immediate neighborhood of public schools will not tend, in a greater or less degree, to demoralize and disturb school children. We are clearly of the opinion that upon the facts in this case there was no such abuse of discretion on the part of the mayor as would justify the courts in compelling him to grant the license applied for.

The judgment of the Appellate Court will be reversed and the cause will be remanded to the superior court with directions to dismiss the petition.

*Judgment reversed.*