152

Joseph J. Halzel, d/b/a Royal Cigarette Service, Plaintiff-Appellee, *v.* The City of Chicago *et al.,* Defendants-Appellants.

(No. 55310; ▇▇▇▇▇▇▇▇▇▇

First District—August 11, 1972.

Richard L. Curry, Corporation Counsel, of Chicago, (William R. Quinlan and Daniel Pascale, Assistants Corporation Counsel, of counsel,) for appellants.

No appearance for appellee.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

This is an appeal from an order granting a writ of *mandamus* directing that cigarette licenses be granted to plaintiff.

The defendants contend (1) that plaintiff failed to show a clear right to the writ because there was an undisclosed co-owner of plaintiff's business, Ramon Sais, who was ineligible to hold a license because of

his conviction of a criminal offense; (2) plaintiff had operated without licenses for at least a month; and (3) plaintiff fraudulently presented license applications containing unauthorized signatures of owners of premises where the cigarette machines were to be placed.

■■ Although plaintiff filed no appearance or brief in this court, we shall review the merits. *Daley v. Jack's Tivoli Liquor Lounge, Inc.*, 118 Ill.App.2d 264, 254 N.E.2d 814.

Plaintiff filed applications for 150 cigarette vending machine licenses which defendants failed to issue. He filed a petition for *mandamus*.

At trial the applications for license were introduced into evidence. They showed disapproval of the applications either on the ground that applicant did not disclose the true and beneficial owners of the company or that the necessary "Certificate of Permission to Concessionaire" was signed by persons who were not the owners of the premises in which the vending machines were to be placed.

The evidence showed that in 1968 plaintiff and Ramon Sais worked together for another company. Ramon testified that although his brother Anthony owned Royal Cigarette Service (hereinafter Royal), Anthony never invested any money in it, took no part in the operation and received no money from it. The business was operated from Ramon's home. The vending machines used in the business were purchased by Ramon and Anthony but Ramon signed the notes of indebtedness. During 1968 Ramon signed three security agreements for purchase of additional machines as Royal's sole owner.

In January 1969 plaintiff became a partner of Anthony's in Royal. He did not put in any money. Plaintiff and Ramon applied for sales tax numbers as partners of Royal; the existence of a partnership between them was acknowledged in writing on June 18, 1969, at Ford City Bank when a bank account was opened under the name of Royal Cigarette Service.

On August 1, 1969, Ramon and plaintiff purchased 34 vending machines from Geris Vending Service; both co-signed the agreement and the installment note. In the following November plaintiff bought Anthony's interest in Royal under an arrangement that he receive no money until the business is successful. Plaintiff received a bill of sale which was signed by Ramon in Anthony's name. It recited a consideration of $12,500 but Anthony never received any money.

On December 15, 1969, Royal purchased the Preferred Vending Company for $220,000 from Edward Ginzberg by verbal agreement. Ginzberg was not the owner and plaintiff did not know who the owner was. He signed no documents and gave Ginzberg no money.

154

It is undisputed that Ramon was convicted of theft from interstate commerce in the United States District Court.

Plaintiff admitted that he operated 450 vending machines for 30 days without licenses.

It was stipulated that between 65 and 70 of the applications for vending machines were not signed by the owners of the premises where these machines were to be installed although the application for license requires written permission of the owners of the premises.

■■■ In *People ex rel. Leleikis v. Dever,* 238 Ill.App. 255, 256 (cited with approval in *People ex rel. Civic Restaurant, Inc. v. Prendergast,* 131 Ill.App.2d 68, 266 N.E.2d 166), the court stated:

"The writ of mandamus is not a writ of absolute right and should not be issued in doubtful cases. (*People [ex rel.] v. Blair,* 292 Ill. 139 [126 N.E. 605].) Nor can it be used to control or review the discretion of properly authorized city officials in the matter of issuing licenses unless there has been a clear abuse of that discretion. (*Harrison v. People [ex rel.],* 222 Ill. 150 [78 N.E. 52].) While such officials may not arbitrarily refuse to issue such a license, neither will they be compelled to issue one when in their discretion, reasonably and fairly exercised, it has been refused by them. (*Harrison v. People [ex rel.], supra* 153 [78 N.E. 52].)"

■■ In the instant case we conclude that no abuse of discretion was shown in defendants' refusal to approve plaintiff's applications for licenses and we therefore find that the writ was improperly awarded. The judgment is reversed.

Judgment reversed.

LORENZ, P. J., and ENGLISH, J., concur.