PRESENT: Hassell, C.J., Keenan, Koontz, Kinser, Lemons, and
Agee, JJ., and Stephenson, S.J.

JANET MARTIN

                                          OPINION BY
v.  Record No. 062013   SENIOR JUSTICE ROSCOE B. STEPHENSON, JR.
                                          April 20, 2007
TRACEY MYERS HOWARD

                FROM THE CIRCUIT COURT OF RUSSELL COUNTY
                        Michael L. Moore, Judge

     This appeal, awarded in response to a Petition for Review

filed pursuant to Code § 8.01-626, concerns the interpretation

and application of Code § 32.1-286(C).[1]

                                 I

     Tracey Myers Howard (the Plaintiff) filed suit against

Janet Martin (the Defendant), seeking, pursuant to Code § 32.1-

286(C), the exhumation of the body of Palmer D. Martin (Palmer)

to obtain a tissue sample for DNA testing.[2]  Howard claimed that

_____

     [1] Code § 8.01-626 provides, in pertinent part, the
following:
          Wherein a circuit court (i) grants an injunction
     or (ii) refuses an injunction or (iii) having granted
     an injunction, dissolves or refuses to enlarge it, an
     aggrieved party may, within fifteen days of the
     court's order, present a petition for review to a
     justice of the Supreme Court . . . .  The petition
     shall be accompanied by a copy of the proceedings,
     including the original papers and the court's order
     respecting the injunction.  The justice . . . may take
     such action thereon as he considers appropriate under
     the circumstances of the case.

     [2] Howard's original complaint was filed against Martin,
individually and as administrator of Palmer's estate, and
against III Martin Trucking, LLC, and Martin Trucking LLC, both
trading as Martin Trucking.

she is Palmer's illegitimate daughter.  The Defendant, who is Palmer's widow and the administratrix of his estate, filed an answer opposing exhumation.

Following an ore tenus hearing, the trial court ruled that the Plaintiff was entitled to exhumation.  The Defendant filed a Petition for Review pursuant to Code § 8.01-626, and we granted review by order entered November 16, 2006.

II

Palmer died intestate on June 19, 2005, in Russell County.  He was survived by his spouse, Janet Martin, and two children by Janet.  Palmer also was survived by the Plaintiff, who claims to be his biological daughter.

Palmer was born in Virginia, but he lived in Ohio as a teenager and young man.  In the mid-1970's, he returned to Virginia, where he resided until his death.

Howard's evidence at trial was that, while in Ohio, Palmer dated the Plaintiff's mother, Mary Jean Myers Shelt, for approximately three years, ending in 1972.  During that time, Palmer and the Plaintiff's mother engaged in an exclusive, intimate sexual relationship.  The Plaintiff was conceived and born on October 10, 1972, in Ohio.  Palmer proposed marriage to Shelt and requested that she move with him to Virginia.  Shelt declined the proposal and remained in Ohio.

Howard's evidence further showed that, during the Plaintiff's childhood, Palmer regularly kept in touch with her. He provided support and assistance to the Plaintiff and Shelt. He took them on trips and vacations and brought gifts to the Plaintiff.  When the Plaintiff was older, Palmer gave her two motor vehicles and the down payment on her house.  He paid for her wedding and joined her for the father-daughter dance at the reception.  Through the years, Palmer acknowledged to family members and many others that he was the Plaintiff's father.  At one time, the Plaintiff asked Palmer if he would submit to a blood test to corroborate his paternity.  Palmer responded that he did not need a blood test because he knew the Plaintiff was his child.

In opposing the exhumation request, the Defendant testified that the exhumation would be painful for her and her children.

III

A

Prior to the enactment of subsection C of Code § 32.1-286, there was no provision in the law allowing a person to seek exhumation of a body in order to obtain a sample for genetic testing to establish parentage.  In Garrett v. Majied, 252 Va. 46, 471 S.E.2d 479 (1996), we reversed a judgment granting a petition for exhumation under Code § 32.1-286(B).  We held that the trial court did not have subject matter jurisdiction to

3

grant the petition in a paternity dispute because Code § 32.1-286(B) applied only to exhumations described in subsection A where cause and manner of death are at issue.  Thus, we concluded that "Code § 32.1-286 does not authorize an exhumation order for the purpose of establishing paternity."  Id. at 49, 471 S.E.2d at 480.

In 1997, in response to our decision in Garrett, the General Assembly amended the exhumation statute by adding subsection C to allow exhumation in paternity disputes by a showing of "substantial evidence" of prevailing.  Code § 32.1-286(C), as amended in 1997, read as follows:

> Upon the presentation of substantial evidence by a moving party that he will prevail in his attempt to prove, in accordance with the provisions of §§ 64.1-5.1 and 64.1-5.2, that he is the issue of a person dead and buried, and in the interest of the furtherance of justice, a court may order the exhumation of the body of a dead person for the conduct of scientifically reliable genetic tests, including blood tests, to prove a biological relationship.  The costs of exhumation and testing shall be paid by the moving party unless, for good cause shown, the court orders such costs paid from the estate of the exhumed deceased.

Former Code § 32.1-286 (1997 Replacement Volume).

In 1999, the General Assembly again amended the statute, mandating that substantial proof of parentage is not required of a petitioner and eliminating a court's discretion to make a finding "in the interest of the furtherance of justice." Therefore, Code § 32.1-286(C), as it existed when the present

4

litigation was filed and as it currently exists, reads as follows:

> Upon the petition of a party attempting to prove, in accordance with the provisions of §§ 64.1-5.1 and 64.1-5.2, that he is the issue of a person dead and buried, a court may order the exhumation of the body of a dead person for the conduct of scientifically reliable genetic tests, including DNA tests, to prove a biological relationship. The costs of exhumation, testing, and reinterment shall be paid by the petitioner unless, for good cause shown, the court orders such costs paid from the estate of the exhumed deceased. This provision is intended to provide a procedural mechanism for obtaining posthumous samples for reliable genetic testing and shall not require substantive proof of parentage to obtain the exhumation order.[3]

B

In the present case, the Defendant first contends that the common law "requires that exhumations be granted only upon a showing of 'good cause'" and that, to the extent Code § 32.1-286(C) "might be in derogation of the common law, it is to be strictly construed." Therefore, the statute should be construed as requiring "'good cause' to the extent that the language and purpose of the statute permits it," and the trial court's exhumation order should be reversed because the Plaintiff failed to present evidence, "as part of her required showing of 'good cause,' that DNA sufficient for a definitive paternity test

---

[3] In 1999, both §§ 64.1-5.1 and -5.2 were also amended to make evidence of the results of scientifically reliable genetic tests admissible to prove paternity for the purpose of inheritance.

5

could be retrieved in the specific circumstances here, e.g., embalming and the lapse of time since burial."

We reject the Defendant's good-cause contention. The two Virginia cases relied upon by the Defendant, Grisso v. Nolen, 262 Va. 688, 554 S.E.2d 91 (2001), and Goldman v. Mollen, 168 Va. 345, 191 S.E. 627 (1937), are inapposite as neither case involved a paternity claim; rather, both cases involved requests for burial relocation.[4]

In enacting Code § 32.1-286(C), the General Assembly expressly provided that the need of a qualified illegitimate child to prove parentage for the purpose of inheritance is sufficient cause for exhumation. No other cause need be shown. Had the General Assembly intended to impose upon a petitioner the burden of showing good cause that a tissue sample could be retrieved that would be sufficient to establish parentage, it would have so provided. It did not do so. Certainly, the General Assembly knew how to do so, as is evidenced by the "good cause" required in subsection C regarding costs of exhumation and the "sufficient cause" required for exhumation pursuant to subsection B.

C

---

[4] The cases from other jurisdictions relied upon by the Defendant are also distinguishable.

The Defendant further contends that, under the statute, a trial court "may, but is not required to, grant a request for exhumation for DNA testing" and that "[w]hether to grant or deny the request is left to the sound discretion of the court."  We do not agree.  While use of the word "may" ordinarily imports permission, it will be construed to be mandatory when it is necessary to accomplish the manifest purpose of the legislature.  Chesapeake & O. Ry. Co. v. Pulliam, 185 Va. 908, 916, 41 S.E.2d 54, 58 (1947); Leigton v. Maury, 76 Va. 865, 870 (1882).

In the present case, the use of the word "may" is jurisdictional and directional, rather than discretionary, and vests in the trial court the authority to order the exhumation.  There is nothing in the statute to suggest that the court has the discretion to deny exhumation to a person who meets its stated requirements.  The court's only discretion is limited to determining whether the petitioner is a "party attempting to prove" parentage for inheritance purposes in accordance with Code §§ 64.1-5.1 and -5.2.  To say a trial court has the discretion to deny exhumation in the present case would defeat the manifest purpose of the General Assembly.

IV

7

For the foregoing reasons, we will affirm the trial court's order of exhumation and remand the case to the trial court for further proceedings.[5]

Affirmed and remanded.

---

[5] We do not consider the Defendant's assignment of error number 2, which reads as follows:

> The circuit court erred by granting the exhumation based on its misconstruction of the exhumation statute as providing "very little" discretion to deny a petition for exhumation, and as requiring that, in light of its findings that the petitioner had submitted a certain quantum of other evidence in support of a finding of paternity, as "require[ing]" the exhumation, regardless of the presence of other factors weighing against it.

The assignment fails to identify "the specific errors in the rulings below upon which the appellant intends to rely." Rule 5:17(c). We also do not permit amendment of assignments of error and, thus, do not consider the Defendant's amended assignment of error 2, as set forth in her brief, which purports to add three lines to the original assignment of error. See Allstate Ins. Co. v. Gauthier, 273 Va. 416, 418 n.*, 641 S.E.2d 101, 103 n.* (2007); see also White v. Commonwealth, 267 Va. 96, 102-03, 591 S.E.2d 662, 665-66 (2004).